Losing, J.,
dissenting:
The questions are, whether the petitioners waived the first charters, or authorized such conclusion by the defendants. I think both questions are negatived by the protest.
Every case of protest involves a submission to terms required, as well as a reservation of legal rights, and notice of this to the other party, and it is only the submission to terms required that makes the necessity for the protest, or any occasion for it. • Thus, where an excise officer, at the common law, or a collector, under the statute, demands more than is due, and the other party pays what is demanded under protest, such payment is a submission to the terms required, but the protest that accompanies it prevents the officer, or the law, from receiving such submission to the terms required as an acceptance of them, and is a notice that the party paying does not thereby waive his legal rights, but will enforce them; and in the case at bar the execution of the second charters under protest, and the subsequent conformity to them, in receiving, &c., and receipting in full for the money payable under them, &e., was but such submission to terms required, with express notice to.the defendants that the petitioners did not accept them in lieu of the terms in the first charters, and would enforce their rights under those.
If the petitioners could have possessed themselves of their barges, upon the Government’s non-compliance with the first charters, then their leaving them in the possession of the Government under the second charter would have been an acceptance of the latter in lieu of the former, for if¡ would have been an election of the petitioners between alternatives $ but the petitioners had no such right and no such election, for they claimed under the first charters, and those entitled the United States to hold the barges during their pleasure, and gave the petitioners no right of re-entry or repossession of the barges for non-payment of the hire, but only a right of action for the hire as it accrued; so that in December, 1863, the petitioners’ only legal demand was for the hire then due, and this they were free to sue for at any time within the statute of limitations. So it was afterward their right to sue for each monthly payment as it became due, or to avoid such a vexatious multiplicity of suits, and await the determination of their contract, and then *455 sue in one suit for all their legal rights under it. This latter course the petitioners adopted, and notified the defendants of it by their protest. In all this 1 think there was no avoidance of litigation, but an express declaration of the purpose of it, for a protest means that, and notifies the other party of it.
Where a debtor refuses to pay the amount due and tenders a less sum the creditot may receive the sum tendered under protest, and afterward sue for and recover the balance; because the protest notified-the debtor the balance would be claimed of him, and he made his payment of the less sum with that knowledge. I think the same principle governs this case. The con: trolling subject of the parties’ consideration was the monthly hire, and the charters were only means for that, and the United States refused to pay the hire stipulated in first set of charters and tendered a less sum in the second, and the conformity of the petitioners to those second charters was merely their receipt of the less sum under protest, which notified the defendants this claim would be made on them. The petitioners, it is truej received the benefit of the less sum paid them from the time of its receipt, and that is always the case where a debtor tenders less than was due, and is, under a protest, sued for the balance.
As I think the petitioners’ execution of and conformity to the second charters consistent with their protest, I think the effect of that was to preserve the petitioners’ rights under the first charters, and that those Should make the measure of their recovery.